The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 422-7909

| | |
|---|---|
| Date: | May 6, 2022 |
| To: | BARTLEY HAGERMAN<br>MEHR, FAIRBANKS & PETERSON<br>201 WEST SHORT STREET<br>SUITE 800<br>LEXINGTON KY 40507 |
| Attn: | |
| Fax: | (859) 225-3830 |
| From: | Lindsay Mack<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5711 |
| Total Pages<br>(Including Cover): | 17 |
| RE:<br><br>Claim #: 8356763<br>Claimant: Jamie Reece<br><br>Toyota Motor Engineering & Manufacturing North America, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

EXHIBIT

2

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 422-7909

May 6, 2022

Bartley K. Hagerman
Mehr, Fairbanks & Peterson
201 WEST SHORT STREET
SUITE 800
LEXINGTON, KY 40507

RE: Long Term Disability (LTD) Benefits
Toyota
Claim #: 8356763
Claimant: Jamie Reece

Dear Bartley Hagerman:

We reviewed Jamie Reece's appeal request for Long Term Disability ("LTD") benefits under Toyota Motor Engineering and Manufacturing North America, Inc.'s Group Disability Income Policy ("the Policy") and maintained the decision to deny benefits beyond July 20, 2021.

**Initial Claim Decision**

Ms. Reece submitted a claim for benefits in connection with her absence from work beginning April 15, 2018. Her LTD benefits began on October 21, 2018, based on her inability to perform her own occupation as a Team Member at Toyota Motor Engineering and Manufacturing North America, Inc.

As of October 20, 2020, Ms. Reece had been receiving benefits for 24 months, and our evaluation of her eligibility for benefits beyond that date was therefore based on her ability to perform the material and substantial duties of any occupation for which she is reasonably fitted by training, education, experience, age and physical and mental capacity.

You were notified by letter dated October 20, 2020 that we were continuing to investigate Ms. Reece's eligibility for benefits under the "any occupation" definition of disability and that, although Ms. Reece would continue to receive benefits during this review, this payment or any future payments should not be interpreted as an admission of present or ongoing liability. We reserved our right to enforce any and all provisions of the Policy at any time. We advised you that we would notify you of our decision upon completion of our review.

Benefits beyond July 20, 2021 were denied as the evaluation concluded Ms. Reece was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated July 21, 2021. Ms. Reece was provided an opportunity to request an appeal review of the denial by submitting a written request stating the reasons why she felt that her claim should not have been denied and submitting additional information to support her claim. Specifically, she was advised to submit the following information: *All hospital admission/discharge summaries, consultation reports, procedure reports, diagnostic test results, office chart notes, patient questionnaire forms, therapy records and physical therapy records from May 21, 2021 through Present; physician documentation of specific work related restrictions and limitations noting the applicable timeframe and the medical documentation to support from any and all providers authorizing disability. You should also provide any additional information that you feel will support her claim.*

## Appeal

In your letter of appeal dated January 13, 2022, you claimed that the peer medical review completed by John Zheng, MD and the vocational transferable skills analysis completed by Nicole Hall, M.S., C.R.C. were unreliable. You asserted that Dr. Zheng's conclusions were unsupported by the medical evidence, and noted that Ms. Reece underwent surgeries following Dr. Zheng's review, which were not considered. You alleged that Ms. Hall's findings were unreliable since she did not review Ms. Reece's medical records or speak with Ms. Reece.

In support of Ms. Reece's appeal, you submitted the following documentation:

- Medical records – Dr. Patrick Leung
- Medical records – St. Joseph Health Neurology
- Medical records – KentuckyOne Health Rheumatology
- Medical records – KORT Physical Therapy
- Medical records – Lexington Clinic
- Medical records – Bluegrass Orthopaedics
- Medical records – Costco Pharmacy
- Medical records – Family Practice Associates
- Medical records – Walmart Pharmacy
- Medical records – Accredo Specialty Pharmacy
- Medical records – Christ Hospital Urogynecology
- Vocational Evaluation – Dr. Stephanie Barnes
- Medical Opinion Letters – Dr. Ben Kibler
- Assorted records – Dr. Katherine Roden
- IME report – Dr. James Owen

Submitted records included duplicate copies of records previously received and reviewed, as well as new documentation.

## Appeal Evaluation

In consideration of Ms. Reece's appeal, a thorough review of all of the information contained in her file was completed.

Ms. Reece claimed disability beginning April 15, 2018 related to neck and right shoulder pain, which she attributed to repetitive motion required by her work. The medical records also reflected a

comorbid diagnosis of psoriatic arthritis.

Ms. Reece's effective date of LTD coverage was December 12, 2017. Because Ms. Reece's disability began within 12 months of her effective date of coverage, her claim is subject to an investigation to determine if her disability was caused by, contributed to by, or resulted from an injury or sickness for which she was diagnosed or received treatment within three months prior to her effective date of coverage, i.e., from September 12, 2017 through December 11, 2017.

During the pre-existing time period in question, from September 12, 2017 through December 11, 2017, the records show the following relevant diagnoses and treatment:

- September 14, 2017 visit with Doris Adams, APRN and September 18, 2017 evaluation by Michael Hopper, PT with Kort Rehabilitation for acute low back pain and radiating pain down left lower extremity after bending over while unloading her car on September 9, 2017.

- November 17, 2017 – new patient visit with Susanna Moberly, APRN (rheumatology). It was noted that she had chronic and recurring joint pain and tenderness with flares more on the right side than the left, and a history of psoriasis for years. Mild psoriatic lesions were observed on exam. Lab work (ESR, CRP, anti-CCP, rheumatoid factor, ANA) was ordered, and prednisone was prescribed.

- Prescriptions filled at Walmart for estradiol, esomeprazole, prednisone.

In June 2019, Ms. Reece's file was reviewed by Dr. Gary Nudell, a board certified internal medicine physician, who opined that the medical records did not specifically document any evaluations or diagnoses during the period of time September 12, 2017 through December 11, 2017 which would be related to the documented impairment associated with Ms. Reece's current absence from work. Based on his review of the medical records on file at the time, Dr. Nudell concluded:

> *Based upon review of the available records, the claimant experienced some type of shoulder and neck injury in January 2018. The specifics opined were unclear from the available medical records, and there does not appear to be findings of an injury that occurred.*
>
> *The claimant has subsequently been evaluated by multiple providers including rheumatology, orthopedics, neurology, neurosurgery, and physical therapy for pain management. The claimant underwent MRI of the right shoulder which did not reveal any significant abnormality, MRI of the cervical spine ultimately did not document any significant abnormality.*
>
> *The medical reports from the claimant's treating provider was unable to provide a specific diagnosis for the claimant's ongoing complaints of pain as well as complaints of numbness and tingling in the right arm. Ultimately all the diagnosis were somewhat unclear, the claimant was being treated for possible CRPS of the right upper extremity with some level of impingement of the right shoulder. While the claimant has a diagnosis of psoriasis and probable seronegative arthropathy, the rheumatology medical records documented this condition was under good control with use of Methotrexate and Humira.*

*There was no indication the medical records that the diagnosis of psoriatic arthropathy has any relation to the shoulder and right upper extremity symptoms that began in January 2018. In addition, there was no indication in the medical records that the psoriatic arthropathy would require any specific restrictions/limitations based on normal joint examination and no evidence of any swelling…*

*Based upon review of the available documentation, the claimant has ongoing complaints of shoulder pain with right upper extremity numbness and tingling. While the specific etiology has not been completely defined in the medical records, the degree of symptoms described in the medical records, the nature of the treatment including use of Neurontin and narcotics for pain management, and the ongoing requirement for physical therapy per orthopedic recommendations, would ultimately support the following restrictions/limitations in relation to these complaints from October 21, 2018 to present:*

- *Avoidance of overhead lifting.*
- *Lifting/pushing/pulling up to 10 pounds of weight with the right upper extremity to waist level only (no restrictions with the left upper extremity).*
- *No restrictions in relation to standing, ambulating, and/or sitting.*
- *No restrictions with fine motor/gross hand movements activity of the upper extremities.*
- *No restrictions in relation to bending, kneeling, and/or squatting.*

*The claimant would be able to perform full-time work activity with these restrictions/limitations from October 21, 2018 to present.*

LTD benefits were approved as the supported restrictions and limitations precluded Ms. Reece from performing the material and substantial duties of her occupation as a Team Member at Toyota.

In July 2020, following receipt of updated medical records, Ms. Reece's file was reviewed by Dr. Behzad Emad, a physician who is board certified in physical medicine and rehabilitation (PM&R) and pain medicine. Based on his review, he concluded:

*The primary impairing diagnoses are complex regional pain syndrome (CRPS) type 1 of right upper limb [G90.511] and history of ORIF of a right wrist fracture [Z98.890].*

*The claimant has a history of neck and right upper extremity pain secondary to CRPS type 1. The claimant's symptoms were being managed by medications and therapy. The claimant then suffered a fall in 10/2019 and sustained a right wrist fracture. ORIF of the fracture was performed and the claimant was placed in a right arm cast. Subsequent visits noted continued neck and right upper extremity symptoms. The claimant had allodynia, temperature change, and edema throughout the right upper extremity. Recent examinations noted tenderness over the cervical paraspinal, rhomboids/trapezius muscles; and presence of right arm cast. The claimant also had mild edema throughout the right upper arm to the forearm. The claimant noted nerve pain in the bilateral lower extremity, but had no abnormal findings on examination.*

*Based on the provided documentation, the claimant has ongoing functional impairments in*

*the right upper extremity, complicated by presence of right arm cast. Although clarification is needed if the claimant is indeed still requiring a right arm cast, as an ample amount of time has passed since her surgery…*

*From 05/01/2020 though the present and up to 1 month from the date of this report, the following restrictions/limitations are supported:*

- *No restrictions in sitting.*
- *Standing up to 4 hours at a time and up to a total of 8 hours in an eight hour period of time.*
- *Walking up to 4 hours at a time and up to a total of 8 hours in an eight hour period of time.*
- *No carrying, lifting, pushing, and/or pulling any amount of weight using the right upper extremity.*
- *No restrictions in carrying, lifting, pushing, and/or pulling any amount of weight using the left upper extremity.*
- *No reaching overhead, above the shoulders, at waist/desk level and below the waist level using the right upper extremity.*
- *No restrictions in reaching overhead, above the shoulders, at waist/desk level and below the waist level using the left upper extremity.*
- *Frequent (activity or condition exists from 1/3 to 2/3 of the time) handling, fingering, feeling, grasping, pinching, gripping, and/or use of hand control using the right hand.*
- *No restrictions for handling, fingering, grasping, pinching, gripping, and/or use of hand controls using the left hand.*
- *No restrictions in twisting, crouching, bending/stooping, kneeling, squatting, stair climbing, and/or use of foot control.*
- *Occasional (activity or condition exists up to 1/3 of the time) driving commercial vehicle.*
- *No crawling, working at unprotected heights, climbing ladders, and/or operating heavy*
- *equipment/safety sensitive machinery.*

*In my opinion the claimant should be re-evaluated in 1 month from the date of this review with updated medical records/examinations/evaluations/diagnostic studies to determine if the restrictions/limitations still apply. The claimant is able to perform full-time duty (8 hours/day, 5 days/week) within the indicated restrictions/limitations.*

You were notified by letter dated October 20, 2020 that we were continuing to investigate Ms. Reece's eligibility for benefits under the "any occupation" definition of disability and that, although Ms. Reece would continue to receive benefits during this review, this payment or any future payments should not be interpreted as an admission of present or ongoing liability. We reserved our right to enforce any and all provisions of the Policy at any time. We advised you that we would notify you of our decision upon completion of our review.

In January 2021, following receipt of additional medical records, Ms. Reece's file was reviewed by Dr. John Zheng, who is board certified in PM&R and pain medicine. He concluded:

*Taking into consideration the entire clinical picture, including standards of care, evidence-based medicine, and with the medical information provided is indicative of ongoing impairment from 10/1/20 to present.*

*The medical records reflect that the claimant is a 52-year-old female with a medical history significant for complex regional pain syndrome and psoriatic arthritis. On 03/06/2020 The claimant was seen by Katherine Roden, M.D., for a follow-up visit. She reported increased pain in her right shoulder and neck that started 3-4 weeks ago. She rated her pain as 4/10. The claimant had a telemedicine consultation with Collin St. Clair, D.O. on 03/30/2020 she reported that two days ago, she started having discomfort in her left upper back radiating into her left upper/posterior arm. There was nothing on the opposite side. She felt a pulling sensation, but there was no acute injury, then she started developing sensitivity in the area. Her discomfort improves with Lyrica. On 06/19/2020 The claimant was seen by Katherine Roden, M.D., for a follow-up visit. She noted ongoing symptoms in her right upper extremity with discomfort through the upper arm and into the forearm. She reported some improvement from the Lyrica 100 mg TID and Tizanidine 4 mg TID PRN. Her last dose of Lyrica was on 06/19/20. She also started noticing nerve pain in her BLE that started approximately 3 weeks ago. 06/26/2020 The claimant had a consultation with Andrew Schneider, M.D., for evaluation of headache. She has been bothered by headaches for 4-5 months. These were not present daily, but they come and go; she can have them for several days in a row and then go for 4-5 days with none. She felt like it crawls up the back of her head and settles in frontally on both sides. It can be mild and dull and steady, and other times it can be a piercing pain, or she can feel like she has to hold her head. She takes Advil PRN. She has had right shoulder pain for two years, which she says was permanent and had been attributed to "CRPS Type I". This causes pain and tightness in the shoulder and into the neck, and she believes this was associated with these headaches. She takes Lyrica 100 mg TID and Tizanidine TID for the pain, and occasionally Tramadol, which does not help much. The claimant was seen by Susanna Moberly, APRN, on 07/31/2020 for a follow-up visit. She reported that her right hip pain was worsening and keeping her up at night. 09/18/2020 The claimant had a telemedicine consultation with Susanna Moberly, APRN. She reported pain and stiffness in her hands and legs along with more frequent skin breakouts. She has a history of complex regional pain syndrome involving the right upper and lower extremity. She was given a prescription for Cosentyx. On 10/12/2020 The claimant was seen by Susanna Moberly, APRN, for a follow-up on psoriatic arthritis. She was currently on Xeljanz 11 mg OD. She denied any side effects. She continued with shin and back itching and rashes despite being on the Xeljanz. She had been having right hip pain and stiffness around the right buttocks. She also reported left hand pain and tenderness. Bilateral hips and lumbar x-ray were requested. Lab tests (CBC, ESR, Creatinine, ALT, AST) were also requested. 10/12/2020 Bilateral hips x-ray revealed minimal degenerative changes in the hips and pelvis. 10/12/2020 Lumbar x-ray revealed mild degenerative disc disease of the lumbar spine. On 10/20/2020 The claimant was seen by Katherine Roden, M.D., for a follow-up visit. She reported some extension of her symptoms into her left upper extremity with swelling and temperature change from the hands up through the elbow. Her principal issue continued to be her right hip discomfort. She underwent x-ray imaging of the hip as well as lumbar back with mild degenerative changes noted.*

*Given the claimant's Complex regional pain syndrome, Cervicalgia, and Headache, the claimant requires restrictions and limitations as outlined below.*

*The claimant has the following restrictions and limitations from 10/1/20 to present with reassessment on or around 4/1/2021.*

*Sitting: unrestricted*
*Standing: frequently, up to 30 minutes at a time, for up to 4 hours per day*
*Walking: frequently, up to 30 minutes at a time, for up to 3 hours per day*
*Lifting: occasional up to 20 lbs.*
*Carrying: occasional up to 20 lbs.*
*Pushing: occasional up to 20 lbs.*
*Pulling: occasional up to 20 lbs.*
*Climbing stairs: occasionally*
*Balancing: occasionally*
*Stooping: occasionally*
*Kneeling: never*
*Crouching: occasionally*
*Crawling: never*
*Reaching: occasionally overhead and below waist level; unrestricted desk level BUE*
*Use lower extremities for foot controls: frequently BLE*
*Fine manipulation: frequently BUE*
*Simple and firm grasping: frequently BUE*

In order to determine if there were occupations within the supported restrictions and limitations for which Ms. Reece was reasonably fitted, we requested additional information regarding her training, education, and experience, which was received from your office in May 2021.

Subsequently, Ms. Reece's claim was reviewed by a vocational consultant for a transferrable skills analysis based on her prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined by Dr. Zheng. The following occupations were identified that Ms. Reece could perform:

- Customer Service Representative
- Information Clerk
- Gate Guard
- Assembler, Production
- Assembler, Small Products I

Further medical review as also completed by Dr. Zheng in July 2020, following receipt of additional medical records. At that time, he noted:

*The claimant is a 52-year-old female with a medical history significant for complex regional pain syndrome, right upper limb, cervicalgia, myofascial pain; right wrist fracture, s/p open reduction internal fixation of right wrist, psoriatic arthritis, bilateral hip osteoarthritis, lumbar disc disease, right foot bunion, right foot osteoarthritis, and right foot hallux valgus.*

*Interval history shows that the claimant has been experiencing chronic pain in her RUE due to repetitive work-related injury from her job which involved a lot of repetitive pushing*

*and pulling and overhead lifting. In 2018, the claimant has been diagnosed with complex regional pain syndrome due to allodynia, temperature change and edema throughout the right upper extremity. On 11/5/19, Dr. Roden saw the claimant for right shoulder and forearm pain. The claimant experienced a fall from a windowsill with subsequent fracture of her right wrist. She was s/p open reduction internal fixation with hardware in place on 10/2019. She underwent regional block with pain pump located which did help control her symptoms. She reported some edema in the right hand as well as occasional symptoms on the left principally in the hand and forearm. On exam, there was tenderness over cervical paraspinals and trapezius muscle; edema right and left hand, left forearm. On 5/15/20, the claimant reported ongoing symptoms in the right upper extremity with discomfort through the upper arm and into the forearm. She also had a myofascial component of her pain with tension through the right axial neck and shoulder. X-rays of the bilateral hips and lumbar spine from 10/12/20 revealed minimal degenerative changes in the hips, pelvis, and lumbar spine. MRI of the lumbar spine performed on 11/3/20 revealed L4-5 mild diffuse disc bulge, mild facet arthrosis, mild bilateral foraminal encroachment; L5-S1 minimal disc bulge, mild facet arthrosis. On 11/17/20, the claimant reported right hip and leg discomfort, right posterior buttock and groin pain. On exam, there was positive axial load on lumbar spine. On 4/6/21, the claimant presented with back pain and hip pain. On exam, she had RUE tenderness and myofascial pain. Moreover, on 5/20/21, the claimant presented with right foot pain, and x-rays revealed moderate-sized bunion at the first metatarsal head with hallux valgus deformity and mild osteoarthritic changes; mild to moderate enthesopathic change about the calcaneus. Physical exam demonstrated hallux valgus deformity, right foot swelling, trigger point pain over right piriformis.*

*Based on the information provided, the claimant has multiple symptoms on the RUE due to complex regional pain syndrome. The diagnosis is supported by the presence of unilateral temperature changes, color changes, and allodynia on her RUE. The claimant also has a history of right wrist fracture which required open reduction internal fixation in 2019. She also had a myofascial component of her pain with tension through the right axial neck and shoulder. The claimant also has degenerative changes in her bilateral hips and lumbar spine which result in chronic pain in her bilateral hips, right greater than left, and her back. More recently, the claimant was diagnosed with hallux valgus deformity and osteoarthritis of her right foot with swelling. The claimant continues to experience chronic pain in her RUE, neck, back, bilateral hips, and right foot. Therefore, the claimant requires restrictions and limitations as outlined below:*

*Sitting: Unrestricted*
*Standing: Frequently, 30 minutes at a time, for up to 3 hours per day*
*Walking: Frequently, 30 minutes at a time, for up to 3 hours per day*
*Lifting: Occasionally up to 20 lbs. RUE; Occasionally up to 40 lbs. LUE*
*Carrying: Occasionally up to 20 lbs. RUE; Occasionally up to 40 lbs. LUE*
*Pushing: Occasionally up to 20 lbs. RUE; Occasionally up to 40 lbs. LUE*
*Pulling: Occasionally up to 20 lbs. RUE; Occasionally up to 40 lbs. LUE*
*Climbing stairs: Occasionally*
*Balancing: Never*
*Stooping: Occasionally*
*Kneeling: Occasionally*
*Crouching: Occasionally*
*Crawling: Never*

*Reaching: Occasionally, overhead and below waist levels RUE; Unrestricted, to desk level RLE; Unrestricted to all 3 levels LUE*
*Using lower extremities for foot controls: Occasionally RLE; Unrestricted LLE*
*Fine manipulation: Occasionally RUE; Unrestricted LUE*
*Simple and firm grasping: Occasionally RUE; Unrestricted LUE*
*No climbing ladders*
*No working at unprotected heights*
*No operating heavy machinery*

It was determined that these restrictions and limitations would not preclude Ms. Reece from performing the previously identified occupational alternatives, which are sedentary and light in their physical demands; therefore ongoing LTD benefits were denied.

As outlined above, additional medical documentation was submitted in conjunction with Ms. Reece's appeal. Of particular significance, the medical records revealed that Ms. Reece underwent surgery on October 28, 2021 for vaginal vault prolapse with recurrent rectocele and cystocele and posterior vaginal wall scarring. In November 2021, she presented with neuralgia of the left pudendal nerve. However, this surgery took place more than one year after the change in definition of disability under the Policy from own to any occupation, and more than three months after benefits were last paid.

During the review of Ms. Reece's appeal, a panel review was completed by Dr. Lisa Pitino, who is board certified in PM&R, and Dr. Ronak Garg, who is board certified in internal medicine, in order to address the totality of Ms. Reece's medical conditions.

From a PM&R standpoint, Dr. Pitino opined that Ms. Reece's primary impairing diagnoses were cervicalgia and psoriatic arthritis. She also noted clinically significant comorbid diagnoses of complex regional pain syndrome, history of right distal radial fracture, distal interphalangeal joint disease of the right hand, lumbar degenerative disc disease, allergic rhinitis, irritable bowel syndrome, hormone replacement therapy, and history of polyps. With regard to functional restrictions and limitations, Dr. Pitino concluded:

> *In consideration of the claimant's medical diagnosis and symptoms outlined in the records, it is supported that there are restrictions and limitations from 07/21/2021 moving forward from a physical medicine and rehabilitative perspective.*
>
> *On 04/10/2018 the claimant underwent MRI of the cervical spine that revealed diffuse disc bulging and mild bilateral foraminal narrowing at C4-C5. On 10/14/2019 the claimant presented to the emergency room for right wrist pain. The claimant had tenderness and swelling at the right wrist upon physical evaluation. Radiographs of the right wrist revealed a distal displaced radius fracture. The claimant was advised to undergo open reduction and internal fixation. On 10/28/2019 the claimant underwent surgery with no complications noted. On 05/20/2021 the claimant underwent x-ray to the right foot that revealed mild degenerative changes. On 06/25/2021 the claimant was seen for evaluation and was noted to have a diagnosis of chronic psoriatic arthritis. On 08/02/2021 the claimant was seen for evaluation and reported right hand pain. The claimant was noted to have a nodule at the right palm and was diagnosed with distal interphalangeal joint disease of the right hand. On 10/28/2021 the claimant underwent a procedure to correct*

*recurrent pelvic organ prolapse. The medical records do demonstrate the claimant has a longstanding history of cervicalgia and psoriatic arthritis. While the medical records do not demonstrate any recent specific exam findings for acute conditions, restrictions and limitations would be reasonable based on the claimant's chronic diagnoses. As such restrictions and limitations are recommended below for cervicalgia and psoriatic arthritis. These restrictions and limitations would be considered permanent as the conditions are not expected to have any significant improvement. With these restrictions and limitations in place, the claimant would be able to sustain full-time activity.*

*Sitting: unrestricted*
*Standing: unrestricted*
*Walking: unrestricted*
*Lifting/carrying/pushing/pulling: occasionally no more than 40lbs, frequently up to 20lbs.*
*Climbing stairs: frequently*
*Climbing ladders: never*
*Stooping: frequently*
*Kneeling: frequently*
*Crouching: frequently*
*Crawling: never*
*Balance: frequently*
*Reaching overhead: occasionally*
*Reaching at waist and desk level: unrestricted*
*Reaching below waist: unrestricted*
*Use lower extremities for foot controls: unrestricted*
*Fine manipulation: unrestricted*
*Simple and firm grasping: unrestricted*
*Keyboarding: unrestricted*

*There is no documented or observed cognitive and/or physical side effects attributed to medication use from a physical medicine and rehabilitative perspective.*

From an internal medicine standpoint, Dr. Garg opined that the primary impairing diagnosis was pelvic floor dysfunction and noted:

*Considering the claimant's medical diagnosis and symptoms, restrictions and limitations are supported for a diagnosis of pelvic floor dysfunction from 07/21/2021 moving forward. The records indicate the claimant had a failed rectocele surgery and has continued symptoms including bowel dysregulation and requirements for self dis-impaction. During the timeframe in question, a revision procedure has been performed and an additional procedure is pending. On 10/28/2021, a skin tissue realignment, vaginal vault suspension and posterior repair were performed. As of 11/15/2021, the claimant still had significant postoperative pain that required a pudendal nerve block. The report noted the claimant was pending surgical treatment for a cystoscopy and sacrospinous stich removal. When accounting for the claimant's ongoing clinical symptoms attributed to the diagnosis, a degree of restrictions and limitations are supported. The claimant's follow-up evaluation findings should be reviewed on or around 05/15/2022 to further clarify the extent or need for additional restrictions and limitations moving forward. The additional listed diagnosis would not arise to the level of impairment. The claimant's other internal medicine related conditions are largely stable without manifestation of significant objective or diagnostic*

*abnormalities that would preclude activity.*

*From 10/28/2021 to the present, the claimant is not capable of performing work-related activity.*

*From 07/21/2021 until 10/27/2021, the claimant has the following restrictions and limitations:*

*Sitting: unrestricted*
*Standing: unrestricted*
*Walking: unrestricted*
*Lifting/carrying/pushing/pulling: occasionally no more than 40lbs, frequently up to 20lbs.*
*Climbing stairs: frequently*
*Climbing ladders: never*
*Stooping: frequently*
*Kneeling: frequently*
*Crouching: frequently*
*Crawling: never*
*Balance: frequently*
*Reaching overhead: occasionally*
*Reaching at waist and desk level: unrestricted*
*Reaching below waist: unrestricted*
*Use lower extremities for foot controls: unrestricted*
*Fine manipulation: unrestricted*
*Simple and firm grasping: unrestricted*
*Keyboarding: unrestricted*

*The reviewed records do not address any side effects from prescription medications. There are no cognitive facts or adverse effects from medication use.*

*The claimant is restricted from full-time functioning from 10/28/2021 moving forward, during the timeframe, the claimant has undergone operative treatment was pending further surgical treatment attributed to symptoms related to pelvic floor dysfunction. Prior to this date, the claimant could sustain full-time activity with restrictions and limitations.*

On February 22, 2022, a copy of the report by Dr. Pitino and Dr. Garg was sent to your office and you were given the opportunity to review it and provide any response you wished to be considered prior to a final determination being rendered on Ms. Reece's appeal. Your response was requested by March 15, 2022.

On March 7, 2022, you submitted an office visit note dated January 20, 2022 from Rachel Gilliam, NP of Sterling Women's' Care. It was noted that she was seen for annual exam and follow up visit, for refill of estradiol for estrogen replacement therapy and pelvic pain after surgery. She reported that she was having to sit on a cushion at all times and having to disimpact herself with a finger in order to have a bowel movement. Trial of vaginal valium was discussed, as well as vaginal estrogen and referring to colorectal surgeon and urogynecologist again for consult.

On March 15, 2022, you sent a letter requesting a 21-day extension to respond to the report by Dr.

Pittino and Dr. Garg. We notified you by letter on March 15, 2022 that we would grant the requested extension to April 5, 2022.

On March 30, 2022, you submitted a supplemental report dated February 26, 2022 from Dr. James Owen. Dr. Owen summarized Dr. Pittino's report and offered critiques. He noted that she did not describe problems associated with recurrent pelvic organ prolapse (without acknowledging that this diagnosis was assessed by the panel co-reviewer Dr. Garg). Dr. Owen opined that Ms. Reece was having more than sufficient debility secondary to the prolapse to keep her from working. He also indicated that the diagnosis of CRPS was not explicitly discussed with regard to restrictions and limitations (although it was referenced as a clinically significant comorbid diagnosis), and opined that the restriction of reaching occasionally was inappropriate. Dr. Owen indicated his opinion that Ms. Reece was disabled from July 2021 to October 2021 and beyond.

The additional documentation was provided to Dr. Pittino and Dr. Garg for review and they each provided addendum reports.

Dr. Garg indicated that there was no significant objective data that would change his previously recommended restrictions/limitations and that the additional medical information did not alter his prior opinion.

Dr. Pittino, however, indicated that the additional documentation would change her prior assessment. In her addendum report, she noted:

> *The claimant had a complicated past medical history to include complex regional pain syndrome, cervicalgia, degenerative joint disease, irritable bowel syndrome, and genitourinary pain.*
>
> *Given that the claimant had difficulty sitting following her surgery, as well as persistent neck and complex regional pain syndrome style pain, the following restriction and/or limitations would be warranted and will be considered permanent as significant improvement is not expected.*
>
> *Sitting: Occasionally up to a total of 2.5 hours/day*
> *Standing: unrestricted*
> *Walking: unrestricted*
> *Lifting/carrying/pushing/pulling: occasionally no more than 40lbs, frequently up to 20lbs*
> *Climbing stairs: frequently*
> *Climbing ladders: never*
> *Stooping: frequently*
> *Kneeling: frequently*
> *Crouching: frequently*
> *Crawling: never*
> *Balance: frequently*
> *Reaching overhead: occasionally*
> *Reaching at waist and desk level: unrestricted*
> *Reaching below waist: unrestricted*
> *Use lower extremities for foot controls: unrestricted*
> *Fine manipulation: unrestricted*

*Simple and firm grasping: unrestricted*
*Keyboarding: unrestricted*

Dr. Pittino clarified that these restrictions would be in effect from July 21, 2021 forward.

Ms. Reece's claim was reviewed by a vocational consultant for a transferrable skills analysis based on her prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined by Dr. Pittino and Dr. Garg for the period from July 21, 2021 until her surgery on October 28, 2021. It was determined that the previously identified occupations (Customer Service Representative; Information Clerk; Gate Guard; Assembler, Production; Assembler, Small Products I) remained viable. It was confirmed that in all the sedentary occupations identified, standing could be performed while remaining in one's workstation with intermittent sitting.

While we acknowledge that Ms. Reece experienced a period of total work incapacity after her pelvic surgery on October 28, 2021, the medical evidence on file does not substantiate her inability to perform the material and substantial duties of any occupation for which she is reasonably fitted prior to that date.

Additionally, to the extent that Ms. Reece's reported disability was caused, contributed to by, or resulted from a condition diagnosed or treated during the period of September 12, 2017 through December 11, 2017, we note that such would be excluded from coverage.

**<u>Conclusion</u>**

We conducted a thorough and independent review of Ms. Reece's entire claim. In summary, we acknowledge that she may have continued to experience some symptoms associated with her condition(s) beyond July 20, 2021. However, the information does not contain physical or mental status exam findings, diagnostic test results or other forms of medical evidence supporting her symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering her unable to perform the duties of the occupations identified as being within her functional capacity and vocational skills.

Having carefully considered all of the information submitted in support of her claim, our position remains that proof of Ms. Reece's continued disability in accordance with the Policy provisions after July 20, 2021 has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**<u>Policy Provisions</u>**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions. The Policy states, in part:

***Disability Benefit***
*When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a*

*Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:*

1. *Disability;*
2. *Regular Attendance of a Physician; and*
3. *Appropriate Available Treatment.*

*The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.*

*For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage…*

*"**Disability**" or "**Disabled**" means:*

1. *For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

   i. *that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

   ii. *thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"**Material and Substantial Duties**" means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

*"**Any Occupation**" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

*"**Own Occupation**" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed at Toyota Motor Engineering & Manufacturing North America, Inc.*

*"**Proof**" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*

1. *a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
2. *an attending Physician's statement completed and signed (or otherwise*

*formally submitted) by the Covered Person's attending Physician; and*

3. *the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Liberty.*

***Pre-Existing Condition Exclusion(s)***
*This policy will not cover any Disability or Partial Disability:*

1. *which is caused or contributed to by, or results from, a Pre-Existing Condition; and*

2. *which begins in the first 12 months immediately after the Covered Person's effective date of coverage.*

***"Pre-Existing Condition"*** *means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage*

***"Treatment"*** *means consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicines.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, Ms. Reece was entitled to appeal the decision made by Lincoln Financial Group (Lincoln), and to submit any additional information she wished to be considered as part of the appeal. Lincoln has conducted a full and fair review of her appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, Ms. Reece's administrative right to review has been exhausted; no further review will be conducted by Lincoln and her claim will remain closed. She may request to receive, free of charge, copies of all documents relevant to her claim. She has the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

Ms. Reece's employer's plan has a contractual limitations period of three year(s), which means that a lawsuit must be brought within three year(s) after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is June 5, 2025.

This information is provided for the purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in Toyota Motor Engineering and Manufacturing North America, Inc.'s Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłįį' dóó ná'ookąąh níní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Lindsay Mack
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 14698
Secure Fax No.: (603) 334-5711